UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

CAROLE MATHIS,

        Plaintiff,

v.

OREGON HEALTH & SCIENCE UNIVERSITY,

        Defendant.

No. CV 04-1409-MO

OPINION AND ORDER

MOSMAN, J.,

In this employment discrimination case, Plaintiff Carole Mathis filed suit against her employer, Oregon Health Sciences University ("OHSU"), alleging federal and state-law claims for religious discrimination, disability discrimination, and leave-act discrimination, and a state-law claim for worker's compensation discrimination. Thereafter, she moved for partial summary judgment on her religious discrimination claims, and OHSU moved for summary judgment on all of the claims. Oral argument was held on October 2, 2005, and at that time, I denied Ms. Mathis' motion, and OHSU's motion in relation to the religious discrimination claims. I also rejected OHSU's argument that the claims are time-barred under Oregon law. This opinion addresses the remainder of OHSU's motion, and for the following reasons, it is granted in part and denied in part.

### DISCUSSION

1.) <u>Disability Claims</u>

It appears[1] Ms. Mathis is raising three different disability related claims:

---

[1] The briefing in this case has been less than clear on what claims are being brought, and more importantly, which facts support which claims.

PAGE 1 - OPINION AND ORDER

(1) discrimination, (2) hostile work environment, and (3) retaliation.

  A.) Discrimination

  To establish a prima facie case for disability discrimination, Ms. Mathis must prove that: "(1) [s]he is disabled within the meaning of the ADA; (2) [s]he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) [s]he suffered an adverse employment action because of h[er] disability." *Allen v. Pac. Bell*, 348 F.3d 1113, 1114 (9th Cir. 2003) (citation omitted). Whether Ms. Mathis is disabled and whether she is qualified to perform the essential functions of her job have not been addressed by the parties. Thus, these issues are not before me, and for purposes of this motion only, I proceed with the analysis assuming these elements are satisfied. The only remaining issue then is whether Ms. Mathis suffered an adverse employment action as a result of her disability. Ms. Mathis claims OHSU's (1) denial of her request to work from home as an accommodation, (2) failure to engage in an interactive process, (3) improper implementation of her service dog accommodation, and (4) decision to place her on paid administrative leave after her doctor released her to return to work were adverse employment actions.

    i.) Denial of requested accommodation and the interactive process

  An employer's failure to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity" is an adverse employment action. 42 U.S.C. § 12112(b)(5); *see also* Or. Rev. Stat. § 659A.112(2)(e). But, the employer does not necessarily have to provide the employee's requested or preferred accommodation; it only has to provide a reasonable accommodation. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002) (internal

PAGE 2 - OPINION AND ORDER

quotations and citation omitted). Thus, upon receiving notice that an employee needs an accommodation, the "employer has a mandatory obligation . . . to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations." *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1137 (9th Cir. 2001) (citation omitted). The interactive process is a dialogue between the employer and the employee about how to effectively accommodate the employee's disability in a way that will not place an undue hardship on the employer. It "requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Id.* The interactive process is also a "continuing duty that is not exhausted by one effort." *Id.* at 1138 (internal quotations and citations omitted).

In September 2002, Ms. Mathis applied for medical leave and also requested that she be allowed to work from home as an accommodation for her disabilities. *See* Pl.'s Ex. H. OHSU approved her application for leave and indicated it would start an interactive process regarding her requested accommodation. In October, one of Ms. Mathis' doctors wrote a letter to OHSU stating that Ms. Mathis could not perform the functions of her job due to various stress-related problems and that the "ideal answer to this problem would be an office within her home." Pl's. Ex. I at 1. OHSU denied Ms. Mathis' request to work from home. However, in doing so, there is no evidence OHSU suggested any alternative accommodations, or even had a discussion with Ms. Mathis about her request. Further, OHSU has not put forward evidence establishing that granting Ms. Mathis' request would have imposed an undue hardship on it. As such, I find that OHSU has not met its burden at summary judgment on this issue.

Ms. Mathis also appears to make a more general argument that OHSU failed to engage in an interactive process with her in total, and OHSU seeks summary judgment against this claim.

PAGE 3 - OPINION AND ORDER

Based on evidence presented, I find that OHSU is entitled to summary judgment on this point. After her work-from-home request was denied, Ms. Mathis asked that she be allowed to bring her service dog to work to help her with her anxiety problems. OHSU granted this request, and when she returned to work she had a meeting with her supervisors about implementing the accommodation. There is also evidence showing OHSU continued to work with Ms. Mathis as she identified problems she was having with her dog in the workplace. OHSU did not always do what Ms. Mathis wanted, or act on her timetable, but it did respond to her concerns and continue to try to work with her in meeting her needs. Finally, after returning to work, Ms. Mathis made a third request for accommodation that she be allowed to move to a different work station away from some of her co-workers who were exacerbating her stress. OHSU also granted this request. Pl.'s Ex. W; C. Mathis Aff., Ex. 5. Thus, while the evidence does not establish OHSU engaged in an interactive process in relation to Ms. Mathis' first requested accommodation, there is ample undisputed evidence it worked with her regarding her later requests.

    ii.)  Implementing the service dog accommodation

As previously discussed, Ms. Mathis' request to bring her service dog to work was granted. Her argument here is that OHSU failed to implement the accommodation properly. Specifically, Ms. Mathis argues OHSU failed to inform and educate her co-workers about why the dog was in the workplace and how it should be treated, and that OHSU placed unreasonable restrictions on the dog. As a starting place, even though Ms. Mathis has not cited any legal authority for her argument, logically it does seem that an employer could be so ineffective in implementing an accommodation as to constitute an adverse employment action. *See, Humphrey*, 239 F.3d at 1137 (the "employer has a mandatory obligation under the ADA to . . . identify *and implement* appropriate reasonable accommodations") (emphasis added); *see also, e.g., Selenke v.*

PAGE 4 - OPINION AND ORDER

*Med. Imaging of Colo.*, 248 F.3d 1249, 1262 (10th Cir. 2001) (recognizing unreasonable delay in implementing reasonable accommodation could be discriminatory); *Anderson v. Ross Stores, Inc.*, No. C 99-4056 CRB; 2000 WL 1585269, at *8 (N.D. Cal. 2000) (same) (listing cases).

After reviewing the parties' evidence on this point, it is clear significant factual disputes exist. The evidence shows OHSU took some steps to prepare the workplace for the dog and respond to Ms. Mathis' concerns, but whether these steps were sufficient to comply with its duty to provide reasonable accommodation is a question for the factfinder. Summary judgment is denied on this issue.

        iii.)    Delaying Ms. Mathis' return to work

Finally, Ms. Mathis argues OHSU decision to place her on paid administrative leave after her doctor released her to return to work was an adverse employment action. The Ninth Circuit accepts a broad view of what constitutes an "adverse employment action" stating that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." *Ray v. Henderson*, 217 F.3d 1234, 1243 (9th Cir. 2000). However, only "non-trivial" actions fit within this definition. *Brooks v. City of San Mateo*, 229 F.3d 917, 928-29 (9th Cir. 2000) (holding that "declining to hold a job open" or "badmouthing an employee outside the job reference context" or "ostracism suffered at the hands of coworkers" are trivial and do not constitute adverse employment actions).

Requesting a reasonable accommodation is a protected activity. *Coons v. Sec'y of U.S. Dept. of Treasury*, 383 F.3d 879, 887 (9th Cir. 2004). Thus, the issue presented here is whether placing an employee on paid administrative leave is reasonably likely to deter them from requesting a reasonable accommodation. The Ninth Circuit has not yet addressed this question, and the courts that have employ a much narrower definition of adverse employment action. *See*

PAGE 5 - OPINION AND ORDER

*id.* (disagreeing with Fifth and Eighth Circuits' "ultimately employment actions" definition of adverse actions); *see also Singletary v. Mo. Dept. of Corr.*, 423 F.3d 886, 891-92 (8th Cir. 2005) (holding that employee placed on paid leave and then restored to prior position did not suffer from adverse employment action); *Breaux v. City of Garland*, 205 F.3d 150, 158 (5th Cir. 2000) (same). However, even under this Circuit's broader definition, it is not reasonably likely, based on the facts in this case, that an employee would be deterred from asserting her employment rights by being placed on paid leave.

OHSU placed Ms. Mathis on paid leave for less than a month, and told her in a letter: "The purpose of the paid leave is to engage in an interactive process with you regarding your request for reasonable accommodation." Def.'s Ex. R. There is no indication Ms. Mathis' benefits were adversely impacted, and when she returned to work, she continued in her same position at her same rate of pay. Under these circumstances, I conclude it is not reasonably likely an employee would be deterred from engaging in protected activity. Indeed, the record shows Ms. Mathis was not so deterred. After being placed on leave, she continued to seek accommodations and communicate with OHSU about problems and concerns she had in the workplace related to her disability. Ms. Mathis argues being placed on leave caused her to be viewed negatively by her co-workers. However, even assuming that is true, this is not the type of problem that arises to the level of adverse employment action. Ms. Mathis did not have to go without pay, and she has not shown that any of her employment-related benefits were in any way impacted. Thus, OHSU is entitled to summary judgment on this issue.

In sum, I find that OHSU is not entitled to summary judgment on Ms. Mathis' disability discrimination claim in total. But, I grant OHSU's motion in relation to Ms. Mathis' arguments that it committed an adverse employment action by (1) failing to engage in the interactive process

PAGE 6 - OPINION AND ORDER

in general, and (2) placing her on paid administrative leave.

B.) Hostile work environment

The Ninth Circuit has not expressly ruled whether a hostile work environment claim exists under the ADA. *See Brown v. City of Tucson*, 336 F.3d 1181, 1190 (9th Cir. 2003) ("Our court has not yet held that [a hostile work environment claim under the ADA] exists . . . ."). However, assuming that such a claim is proper, Ms. Mathis must produce evidence of the following to survive summary judgment: (1) that she was "subjected to verbal or physical conduct" because of her disability, (2) that the "conduct was unwelcome," and (3) that the "conduct was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment." *Porter v. Calif. Dept. of Corr.*, 419 F.3d 885, 892 (9th Cir. 2005). The third element is only satisfied where the "work environment was both subjectively and objectively hostile." *Dominguez-Curry v. Nev. Transp. Dept.*, 424 F.3d 1027, 1034 (9th Cir. 2005). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citation omitted).

The facts Ms. Mathis cites in support of this claim are that while she was on medical leave in the Fall of 2002, she received phone calls at her home from co-workers saying she should quit her job and that she should "see a psychiatrist," and that when she told OHSU about the problem it did nothing to remedy the situation. She also argues OHSU's actions in relation to her service dog (unreasonable restrictions, failure to educate co-workers, failure to address co-workers' behavior toward the dog) created a hostile environment. Taking these allegations together and viewing them in the light most favorable to Ms. Mathis, I find that she has stated sufficient facts to create a genuine issue of disputed fact. Thus, OHSU's motion for summary judgment is denied

PAGE 7 - OPINION AND ORDER

as to this claim.

    C.) Retaliation

Finally, Ms. Mathis claims OHSU retaliated against her on the basis of her disability for requesting reasonable accommodations. To establish unlawful retaliation under the ADA, plaintiff must show: "'(1) involvement in a protected activity, (2) an adverse employment action and (3) a causal link between the two.'" *Coons*, 383 F.3d at 887 (citing *Brown*, 336 F.3d at 1187). Requesting accommodations, as noted above, is a protected activity. Ms. Mathis alleges the adverse employment actions in relation to this claim are again that OHSU failed to properly implement her service dog accommodation, and that she was subjected to a hostile work environment. As discussed above, neither of these issues can be resolved at summary judgment. As for causation, I also find there are issues of fact for the factfinder to resolve. However, any actions occurring before Ms. Mathis' alleged triggering event–her requests for accommodation–are not properly considered in relation to this claim.[2] OHSU's motion for summary judgment is also denied as it relates to this claim.

2.) <u>Leave-Act Claims</u>

Ms. Mathis also claims OHSU unlawfully interfered[3] with her employment rights under

---

[2]On the current record, it appears Ms. Mathis made her first request in September, but the exact date is not clear. However, once the timing is established, it could impact whether the fact finder can consider her allegations about receiving phone calls at home.

[3]The parties refer to this as a discrimination or retaliation claim; however, the Ninth Circuit made clear in *Bachelder v. Am. W. Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001), that FMLA's anti-discrimination and anti-retaliation provisions "do not cover visiting negative consequences on an employee simply because he has used FMLA leave." Rather, these types of claims are properly raised under the provision making it "unlawful for any employer to interfere with . . . any right provided" by FMLA. 29 U.S.C. § 2615(a)(1); *Bachelder*, 259 F.3d at 1124.

the federal and state leave acts by taking adverse action against her because she had taken leave. 29 U.S.C. § 2614; Or. Rev. Stat. § 659A.885(1). To prevail on this claim, Ms. Mathis need only prove that (1) she took protected leave, (2) she suffered an adverse employment action, and (3) "her taking of FMLA-protected leave constituted a negative factor" in OHSU's decision to take action against her. *Bachelder*, 259 F.3d at 1125.

Ms. Mathis took protected leave in late August 2002 and again in September. She alleges OHSU took adverse action against her for taking this leave by (1) disciplining her, (2) placing her on paid administrative leave, and (3) subjecting her to a hostile work environment. As discussed above, being placed on paid leave is not properly considered an adverse action in this case. However, if proven, the other two would count as adverse actions. Thus, the key here is whether Ms. Mathis produced evidence sufficient to create an issue of fact regarding OHSU's motive–the causal link.

As stated above, a causal link is shown where the employee proves that her taking leave was "a negative factor" in the employer's decision(s). *Id.* This can be established through direct or circumstantial evidence or both. *Id.* In discussing a similar claim under Title VII, the Ninth Circuit held that causation can be inferred from "circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision." *Yartzoff v. Thomas*, 809 F.2d 1371, 1376 (9th Cir. 1987). Under this standard, Ms. Mathis has met her burden to defeat summary judgment. Obviously OHSU knew when she took leave, and there is a close proximity between when she took leave and the alleged adverse actions. For example, Ms. Mathis received a written reprimand on September 3, immediately after returning to work from her leave in August. Likewise, the allegations supporting her hostile work environment claim closely follow

PAGE 9 - OPINION AND ORDER

her leave times. OHSU argues Ms. Mathis cannot establish a causal link because there were other, non-interfering factors at issue in its decisions. However, Ms. Mathis does not have to prove interfering with her right to leave was OHSU's *only* motive; she only has to raise an inference that it was "*a* negative factor." *Bachelder*, 259 F.3d at 1125 (emphasis added). And for purposes of summary judgment, I find she has met this burden.

3.) <u>Workers' Compensation Claim</u>

Finally, Ms. Mathis asserts OHSU retaliated against her for making a workers' compensation claim. This claim is based solely on state law. Or. Rev. Stat. § 659A.040. To state a prima facie case, Ms. Mathis must show that (1) she invoked the worker's compensation system, (2) she was discriminated against "in the tenure or terms of employment", and (3) there is a causal link between the two. *Stanich v. Precision Body & Paint, Inc.*, 950 P.2d 328, 335 (Or. Ct. App. 1997).

There is nothing particularly unique about this claim apart from the rest of Ms. Mathis' retaliation claims. She made a workers' compensation claim for benefits on September 18, 2002, and she alleges all the adverse employment actions she suffered thereafter were done in retaliation. Ms. Mathis admits that she made workers' compensation claims before September 2002 and she was never treated adversely by OHSU; however, she asserts that the close temporal connection between the claim at issue here and the adverse actions she alleges create an inference of retaliatory motive. I see no meaningful way to distinguish the causal-link analysis of this claim from the other retaliation claims. Thus, consistent with my prior findings, I also find that an issue of fact exists regarding whether OHSU took adverse action against Ms. Mathis because she filed a workers' compensation claim. However, again it must be noted that any adverse actions occurring prior to Ms. Mathis filing her claim on September 18 (like the written remand she received on

September 3) cannot be considered.

## CONCLUSION

OHSU's motion for summary judgment is GRANTED IN PART and DENIED IN PART. It is granted as relates to the questions of whether OHSU completely failed to engage in an interactive process and whether placing Ms. Mathis on paid administrative leave was an adverse employment action. It is denied as to the remainder of the issues and claims.

IT IS SO ORDERED.

Dated this __4th__ day of January, 2006.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge